IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Xavier Redmond and Natasha Hayward, <br><br> Plaintiffs, <br><br> v. <br><br> City of Rockford, Irvin Benitez, and Josh Carpenter <br><br> Defendants. | Case No.: 22-cv-50040 <br><br> Judge Iain D. Johnston |

MEMORANDUM OPINION AND ORDER

Plaintiffs Xaiver Redmond and Natasha Hayward brought this § 1983 suit against Defendants City of Rockford, Irvin Benitez, and Josh Carpenter, alleging excessive force and other state and constitutional violations. Defendants moved for summary judgment. For the reasons below, the Court grants the Motion as to the federal claims and dismisses the supplemental state-law claims for lack of jurisdiction.

**Background**[1]

The Court recounts only the facts that are relevant to deciding this Motion. In August 2019, the Rockford Police Department and the U.S. Drug Enforcement Agency ("DEA") established a joint task force to combat drug trafficking. Dkt. 60 ¶ 7 (citing Ex. 5); Dkt. 65 ¶ 7. The agreement required Rockford Police to assign one officer to the task force, who would be deputized as a DEA agent. Dkt. 60 ¶ 7; Dkt. 65 ¶ 7. The deputized DEA agent acts under the supervision and control of the Rockford DEA Office's Resident Agent in Charge. Dkt. 60 ¶ 7; Dkt. 65 ¶ 7. Benitez was the deputized agent during the incident in this case. Dkt. 60 ¶ 8 (citing Ex. 3, 7:11–18); Dkt. 65 ¶ 8.

---

[1] As Defendants note, Plaintiffs don't strictly comply with Local Rule 56.1(e)(1), failing to "set forth the text of the asserted fact," among other deficiencies. The Court rejects Defendants' request to enforce strict compliance, though it construes any resulting ambiguity against Plaintiffs. *See Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 606–07 (N.D. Ill. 2011) ("District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions."); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

1

On December 17, 2019, Rockford DEA's Resident Agent in Charge, Brent Williams, called Benitez at around 11:00PM. Dkt. 60 ¶ 9, Dkt. 60, Ex. 6, pg. 2; Dkt. 65 ¶ 9. Williams told Benitez that the Chicago DEA team was surveilling a car (driven by Redmond and registered to Hayward) that was about to enter Rockford. Dkt. 60 ¶ 9; Dkt. 65 ¶ 9. Williams told Benitez to assist the Chicago DEA team. Dkt. 60 ¶ 10; Dkt. 65 ¶ 10. Benitez joined Williams and four other Rockford DEA agents and at least three Chicago DEA agents. Dkt. 60 ¶ 11; Dkt. 65 ¶ 11. The team followed Hayward's car to her home. Dkt. 60 ¶ 11; Dkt. 65 ¶ 11. Williams and a Chicago DEA supervisor directed the investigation and supervised the team. Dkt. 60 ¶ 16; Dkt. 65 ¶ 16.

From that point on, the Parties' version of events don't perfectly align. In summary, the DEA agents knocked on Hayward's door and eventually spoke with her, and at some point Redmond joined the conversation. *See* dkt. 60, ¶¶ 17–24; dkt. 65 ¶¶ 17–24. The DEA agents observed some contact between Redmond and Hayward. *See* dkt. 60, ¶ 26; dkt. 65, ¶ 26. The agents then told Redmond that he was under arrest and asked him to come outside. *See* dkt. 60, ¶¶ 28–32; dkt. 65 ¶¶ 28–32. DEA agents eventually brought Redmond to the ground. *See* dkt. 60, ¶¶ 31–32; dkt. 65 ¶¶ 31–32. During the arrest, Redmond suffered a broken ankle. *See* dkt. 60, ¶¶ 52; dkt. 65 ¶¶ 52.

Benitez then called for a Rockford Police squad car, and placed Redmond in it. Dkt. 60, ¶¶ 41–42; dkt. 65, ¶¶ 41–42. Benitez obtained an Illinois Domestic Violence Victim Rights form from a Rockford Police officer to present to Hayward. Dkt. 60 ¶ 42; Dkt. 65 ¶ 42. Benitez presented a search consent form to Hayward, which she signed, although the Parties dispute whether Benitez explained the document. *See* Dkt. 60 ¶ 44; Dkt. 65 ¶ 44. Later, Benitez drove Redmond to a police station. Dkt. 60 ¶ 48; Dkt. 65 ¶ 48. He completed criminal charges at the station for domestic battery, obstructing an officer, and resisting a peace officer. *See* Dkt. 60 ¶ 53; Dkt. 65 ¶ 53. Carpenter arrived after Redmond had left the scene, and DEA agents had already searched the home. Dkt. 60 ¶¶ 50–51; Dkt. 65 ¶¶ 50–51.

**Claims**

Plaintiffs initially raised eight claims, but Plaintiffs concede that the state law claims (Counts IV, VI, and VII) are time barred. Dkt. 69, pg. 2. Counts I, II, and III are for unreasonable search, unreasonable seizure, and excessive force respectively and are brought against Benitez and Carpenter. Count V is against the City of Rockford to indemnify Benitez and Carpenter, assuming they're liable. And Count VIII is against Benitez for malicious prosecution.

**Summary Judgment Analysis**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the nonmovant, construing the evidence and all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). However, the Court need not draw every conceivable inference, only reasonable ones. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005). And "[s]peculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Indeed, "the nonmoving party 'must do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Under Local Rule 56.1, the Court limits its analysis to the facts presented in the Parties' 56.1 statements. *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015).

    a.    *Carpenter*

Plaintiffs admit that Rockford Police Officer Carpenter did not arrive on scene until after Benitez had taken Redmond away. Dkt. 60, ¶¶ 50–51; dkt. 65, ¶¶ 50–51. And as Defendants note, Plaintiffs fail to even mention Carpenter in their Response. So, Carpenter can't possibly be liable for the excessive force or unreasonable seizure allegations. Regarding the unlawful search claim: after Redmond's arrest and after DEA agents had already searched Hayward's home, Carpenter conducted a search with his K-9. *See* Dkt. 60, ¶¶ 50–51; dkt. 65, ¶¶ 50–51. Carpenter was advised that consent had been given to search the home. Dkt. 60, ¶ 50; dkt. 65, ¶ 50. Those facts aren't in dispute. Defendants raise compelling arguments as to why Carpenter's search was either lawful or at least entitled to qualified immunity. Plaintiffs failed to address those arguments. So, the Court enters judgment in Carpenter's favor.

    b.    *Benitez*

Section 1983 allows litigants to sue officials for federal constitutional and statutory violations committed under color of state law. 42 U.S.C. § 1983. But the statute only opens the doors for claims against state agents, not federal ones. *Slabon v. Berryhill*, 751 F. App'x 928, 930 (7th Cir. 2019); *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973). Unlike Carpenter, who isn't alleged to have any federal associations, Benitez is a Rockford Police officer who served on the federal taskforce that arrived at Hayward's home. So, where does he fit in?

Nearly fifty years ago, the Seventh Circuit resolved that question in *Askew v. Bloemker*. 548 F. 2d 673 (1976). In *Askew*, state officers joined the Department of Justice's Drug Abuse Law Enforcement (DALE) agency in allegedly raiding plaintiff's home. *Id.* at 675. The state officers assisted the federal agents and served under federal direction. *Id.* Plaintiffs sued the state officers under § 1983, arguing that as

3

"dual-status" officials they acted under color of state law. *Id.* Examining the "totality of the circumstances," this Circuit disagreed. *Id.* at 677. It stressed that the raid resulted from a federal investigation and that the state officers were subject to DALE's immediate control. *Id.* Though the agents also carried state badges and remained accountable to state supervisors, the other factors "cast[ed] an indelibly federal hue upon" the state agents. *Id.* The Circuit held that the state officers were not subject to § 1983. *Id.* at 678. *See also Hughes v. Meyer*, 880 F. 2d 967, 971 (7th Cir. 1989) (reiterating *Askew*'s finding that state officers assigned to a federal drug agency did not act under color of state law). The determination of whether a public official is acting under color of federal law, rather than state law, is a question of law. *Jones v. Gansky*, No. 23-CV-2967, 2024 U.S. Dist. LEXIS 185169, at *20–21 (E.D. Pa. Oct. 10, 2024).

Cases over the past decades have cemented *Askew*'s holding. In *Amoakohene v. Bobko*, relying on *Askew* and *Hughes*, a Northern District court found § 1983 inapplicable to Chicago Police officers who operated within a DEA task force. 792 F. Supp. 605, 607–10 (1992). And, as Defendants highlight, another court reached the same conclusion just seven years ago in *Lee v. Village of Glen Ellyn*. 2017 U.S. Dist. LEXIS 73321, at *8 (N.D. Ill. May 15, 2017) ("'[T]hese officers were acting as federal agents because their activities were conducted as part of a federal investigation.'") (citing *Amoakohene*, 792 F. Supp. at 608)). Indeed, "[c]ourts have consistently treated local law enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents." 2017 U.S. Dist. LEXIS 73321, at *8 (citing *Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005); *see also Village of Glen Ellyn*, 2017 U.S. Dist. LEXIS 73321, at *8 fn. 1 (collecting cases). Courts outside the Seventh Circuit are in accord. *Jones*, 2024 U.S. Dist. LEXIS 185169, at *22–23.

Common factors emerge from *Askew* and the litany of cases that followed it, helping courts determine when an official's federal hat replaces her state one. *See Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 535–37 (M.D.N.C. 2008) (extensively citing *Askew* and outlining analytical frameworks and relevant considerations). Courts will consider whether a cross-deputization agreement exists between her state employer and the federal agency. *See id*; *Amoakohene*, 792 F. Supp. at 608. They'll also assess whether the officers "participated in a clearly federal investigation or in a federally instigated raid," and whether the officers were subject to federal control. *Pettiford*, 556 F. Supp. 2d at 536 (citing *Askew*). Other factors include compensation structure and whether officers wore federal or state insignia. *Id.* No factor in isolation is dispositive. *Id.*

*Askew* on its own controls the outcome here; the later cases only bolster that conclusion. Rockford and the DEA executed a formal task force agreement under 28 U.S.C. § 873 (instructing the U.S. Attorney General to collaborate with local entities). The DEA deputized Benitez as a sworn federal agent, and Benitez carried a federal

4

badge. He acted "under the direct supervision and control of DEA supervisory personnel." Though Rockford Police paid Benitez's salary, it could seek reimbursement from the DEA for overtime activities.[2]

On the night of the incident, Benitez was home, not engaged in any Rockford Police duties. His DEA supervisor ordered him to join at least eight other DEA agents in confronting Redmond, who the DEA had been investigating before the encounter. Under *Askew* and its descendants, there's no question Benitez arrived on scene as a federal agent.

Plaintiffs argue that the charged offenses retroactively convert Benitez into a state actor. Federal agents don't usually arrest people for domestic battery or similar state statutes, Plaintiffs note, so they conclude that Benitez acted as a state agent. They further contend that because Benitez drove Redmond to a county jail, drafted a Rockford police report, prepared the state criminal charges, the totality of the circumstances show state conduct.

But all that conduct originates from the initial uncontradictably *federal* encounter. The underlying arrest doesn't alter Benitez's federal character during his assignment. Indeed, when a deputized DEA agent "engage[s] in traditional methods of investigation in order to effectively prosecute criminal conduct . . . an arrest for a [state law] violation incident to activities in connection with [a] joint task force does not convert defendants' status to that of a state actors." *Amoakohene*, 792 F. Supp. at 608 (plaintiff arrested for a municipal code violation during a DEA investigation).

Plaintiffs cite no caselaw suggesting that the charged offense or an officer's post-encounter actions are relevant, let alone determinative. Instead, they lean on the thorny and unique cases in National Guard law. As Defendants note, "the Guard occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns." Apparently, no courts (including *Askew*, *Amoakohene*, and *Village of Glen Ellyn*), analogize § 1983 cases involving DEA officers to National Guard ones. This Court won't either. It concludes that Benitez isn't subject to § 1983 because he acted as a federal agent during the incident.[3]

---

[2] Plaintiffs argue that, at least in general, Rockford, not the DEA, paid Benitez. *See* dkt. 69, pg. 7. But the Task Force Agreement indicates that the DEA reimburses officers for overtime. *See* dkt. 60, Ex. 5, ¶ 6. Benitez arrived at Hayward's at around 11:00PM, so it's unclear which entity was ultimately on the hook. Regardless, this factor is negligible alongside the mountain of others evincing Benitez's federal character

[3] Though a few courts have reconstrued § 1983 claims against federal officers as *Bivens* claims, this Court isn't inclined to do so. Defendants thoroughly objected to the § 1983 basis, but Plaintiffs doubled-down on its state-actor theory without even mentioning *Bivens* in the alternative.

      *c.*      *Supplemental State-Law Claims (Counts IV through VIII)*

Because all of the federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over the state-law claims. *See RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479-80 (7th Cir. 2012). These claims are dismissed for lack of jurisdiction.

**Conclusion**

For the reasons above, the Court grants Defendants' Motion [58] for summary judgment on all of the federal claims. The Court dismisses without prejudice the supplemental state-law claims for lack of jurisdiction.

Entered: December 2, 2024              By: _____
                                                          Iain D. Johnston
                                                           U.S. District Judge